JAMES McMANIS (40958)
ABIMAEL BASTIDA (303355)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
Email: abastida@mcmanislaw.com

Attorneys for Plaintiff,
DEBORAH WHITING

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| DEBORAH WHITING, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN JOSE, a municipal public entity; JENNI BYRD, individually, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.      In 2019, the California Legislature found and declared: "That the authority to use physical force, conferred on peace officers by [Penal Code § 835a], is a serious responsibility that shall be exercised judiciously and with respect for human rights and dignity and for the sanctity of every human life." Pen. Code, § 835a(a)(1).

2.      This action is brought to redress the unlawful assault and battery of Deborah Whiting at the hands of San Jose Police Officer Jenni Byrd. On July 10, 2019, Officer Byrd assaulted and battered Ms. Whiting without lawful or justifiable cause, causing injury and harm. Ms. Whiting was sixty-six (66) years old at the time.

///

3.      Following the July 10, 2019 incident, Ms. Whiting made futile requests for records from the City of San Jose, the San Jose Police Department, and the City Attorney's Office under the California Public Records Act ("CPRA") and Penal Code section 832.7(c).

**JURISDICTION AND VENUE**

4.      This action arises under 42 U.S.C. § 1983, the Constitution of the United States, the Constitution of the State of California, and California state law.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367(a).

5.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because the action arises therein, and a substantial part of the events giving rise to this action occurred therein.

**INTRADISTRICT ASSIGNMENT**

6.      Assignment of this action to the San Jose Division is proper under Civil Local Rules 3-2(c) and 3-2(e), because a substantial part of the events giving rise to the claims alleged herein occurred in the City of San Jose, County of Santa Clara.

**PARTIES**

7.      Plaintiff, DEBORAH WHITING ("Plaintiff" or "Ms. Whiting"), is and at all times herein mentioned was an individual and a resident of the City and County of San Francisco.  She is entitled to bring her claim pursuant to federal civil rights law.

8.      Defendant, the CITY OF SAN JOSE ("City"), is a public entity duly authorized and existing as such in and under the laws of the State of California, with the capacity to sue and be sued.  At all times herein mentioned, the City is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Jose Police Department ("SJPD"), and its officers.  At all times herein mentioned, the City has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the SJPD and the tactics, methods, practices, customs, and usage, of its officers.  At all times relevant to the facts alleged herein, the City was responsible for assuring that the actions, omissions, policies, procedures, tactics, methods, practices, and customs of the SJPD and its employees and agents, including Does 1 through 50, inclusive,

1   complied with the laws of the State of California, federal laws, and the United States

2   Constitution.

3          9.      Defendant, JENNI BYRD ("Officer Byrd") is, and at all times herein mentioned

4   was, an officer of the SJPD.  Officer Byrd wrongfully assaulted and battered Ms. Whiting.

5   Officer Byrd is sued in her individual capacity.

6          10.     The City, at all times herein mentioned, was the employer of Officer Jenni Byrd,

7   and Does 1-50, inclusive.

8          11.     Plaintiff is informed and believes that the City has possession, custody, or

9   control of the records at issue in this lawsuit.

10         12.     The true names and capacities, whether individual, corporate, associate,

11  representative, or otherwise of defendants named herein as DOES 1 through 50 are unknown to

12  plaintiff at this time, and therefore these defendants are sued by such fictitious names.  Plaintiff

13  will amend this complaint to allege the true names and capacities of DOES 1 through 50 when

14  they become known to her.

15         13.     At all times herein mentioned, defendants, including those sued herein as Does 1

16  through 50, were the agents, servants, and employees of their co-defendants, and in doing the

17  things herein alleged were acting in the scope of their authority as such agents, servants and

18  employees, under the direction and supervision and with the permission and consent of their co-

19  defendants.  At all times herein mentioned, defendants, including those sued herein as Does 1

20  through 50, aided, abetted, or conspired in the violation of plaintiff's rights.  The acts or

21  omissions charged in this Complaint as having been done by the City and the DOE defendants

22  were authorized, ordered, or done by their officers, agents, employees, or representatives, while

23  actively engaged in the management of the defendants' affairs.

24                          **GENERAL ALLEGATIONS**

25         14.     Plaintiff hereby incorporates by reference paragraphs 1 through 13, inclusive.

26         15.     On July 10, 2019, plaintiff attended a Paul McCartney concert at the SAP Center

27  in San Jose, California.  The concert began at approximately 8:30 p.m.

28  ///

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF; CASE NO.

16.     When the concert began, the volume was unbearable to plaintiff and caused her discomfort.  She decided to leave.  Before leaving, she spoke with a SAP staff person to ask about a refund for the money she paid to attend the concert.  The SAP staff person directed plaintiff into a stairwell because the volume of the concert made it difficult to carry on a conversation otherwise.  Plaintiff and the SAP staff person were followed into the stairwell by Officer Byrd.

17.     Once in the stairwell, plaintiff asked for a refund.  The SAP staff person left the stairwell to look for a supervisor to address plaintiff's request.  Plaintiff and Officer Byrd remained in the stairwell alone.  Officer Byrd then questioned plaintiff regarding her request for a refund.  Plaintiff ignored Officer Byrd.  Officer Byrd became agitated and berated plaintiff.  Officer Byrd then wrongfully assaulted and battered Plaintiff by grabbing her from behind and throwing her against the stairs causing injury and harm.

18.     After the assault, and in fear of further harm, plaintiff asked for the officer's name and badge number.  Plaintiff then left the concert without further incident or a response to her request for a refund.

19.     Plaintiff was never told she was under arrest or asked to leave the premises before she was assaulted and battered.  At no time did plaintiff attempt to resist or evade arrest.

20.     Plaintiff posed no threat of physical injury either to Officer Byrd, herself, or anyone else when she asked for a refund or when Officer Byrd assaulted and battered her.

21.     The force used by Officer Byrd against plaintiff was unwarranted and not reasonable under the totality of the circumstances.

22.     Alternatively, or concurrently, Officer Byrd's own excessive and unreasonable actions created a risk of harm to plaintiff, causing a situation in which she decided to use excessive force, and an escalation of events leading to the assault and battery of plaintiff.

23.     Plaintiff suffered great physical and mental pain, shock, and distress due to the actions of defendants.

24.     Officer Byrd's conduct herein, including, but not limited to her use of excessive force was contrary to reasonable police procedures and tactics, and caused the injuries

4

complained herein.

25.   The City, including the SJPD, failed adequately to train, supervise, and discipline Officer Byrd and other officers regarding the use of reasonable methods to detain and arrest individuals.

26.   The City, including the SJPD, had actual and constructive knowledge that the failure adequately to train, supervise, and discipline Officer Byrd and other officers would cause violations of plaintiff's personal and constitutional rights.

27.   The City, including the SJPD, had actual and constructive knowledge that Officer Byrd was not competent to perform her duties.

28.   The force used against plaintiff was excessive, unreasonable, without cause, and with deliberate indifference to her health and safety.

29.   As a direct and proximate result of the actions and omissions of defendants described above, plaintiff suffered personal injury, including bodily injury, physical pain, emotional distress, and deprivation of her constitutional rights, according to proof at the time of trial.

30.   At all material times, the actions and omissions of each defendant were intentional, wanton, or willful, conscience-shocking, reckless, malicious, deliberately indifferent to plaintiff's rights, and done with actual malice.

31.   Before filing this action, on or about March 24, 2020, plaintiff made public records requests for information regarding the July 10, 2019 incident described above, including but not limited to, requests related to statements or complaints made by plaintiff regarding the incident.  To date, plaintiff has not received an adequate response.

## FIRST CAUSE OF ACTION

**[Excessive Force; Violation of the Fourth Amendment to the United States Constitution; 42 U.S.C. § 1983 – Against all Defendants]**

32.   Plaintiff hereby incorporates by reference paragraphs 1 through 31, inclusive.

33.   Defendants, acting under color of state law, deprived plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States, including

those secured by the Fourth and Fourteenth Amendments to the Constitution by, among other things, subjecting plaintiff to excessive force, and acting with deliberate indifference toward her health and safety.

34.     At all times mentioned herein, defendants were acting in accordance with a custom, policy, and practice of the City and the SJPD in violating plaintiff's constitutional rights.  Plaintiff is informed and believes, and thereon alleges, that defendants' actions alleged herein were the direct and proximate result of the failure of the City to train the SJPD officers adequately on what is required under the Fourth Amendment, and the case law interpreting it, to support the use of force.  Such failure amounts to deliberate indifference to the rights of persons with whom the defendant officers come into contact.

35.     Plaintiff is informed and believes, and thereon alleges, that the damages she sustained as alleged herein were the proximate result of customs, policies, and practices which included, but were not limited to, the failure adequately or appropriately to train officers in making detentions, arrests, and using force.

36.     The aforementioned deliberate indifference, customs, policies, and practices of defendants, and the ratification thereof, resulted in the deprivation of plaintiff's constitutional rights, including, but not limited to, the following:

      a.   the right not to be deprived of liberty or property without Due Process of Law;

      b.   the right to be free from Unreasonable Searches and Seizures;

      c.   the right to Equal Protection of the Law;

      d.   the right not to be subjected to Cruel or Unusual Punishment;

      e.   the right to enjoy civil and statutory rights.

37.     As a direct and proximate result of defendants' conduct alleged herein, plaintiff sustained the injuries and damages as alleged heretofore in this complaint.

38.     In doing the foregoing wrongful acts, defendant Byrd acted with malice, fraud, and oppression, and in reckless disregard of plaintiff's constitutional rights, justifying an award of exemplary and punitive damages.

**SECOND CAUSE OF ACTION**

**[Action to Compel Compliance with Penal Code § 832.7(c) –**

**Code Civ. Proc., §§ 526, 1060 – Against All Defendants]**

39.   Plaintiff hereby incorporates by reference paragraphs 1 through 38, inclusive.

40.   Plaintiff brings this cause of action pursuant to Code of Civil Procedure sections 526 and 1060.

41.   On or about July 10, 2019, plaintiff complained to the SJPD about the encounter she had with Officer Byrd, which occurred on or about the same date.

42.   On or about August 12, 2010, plaintiff complained to the San Jose Internal Affairs Unit and the San Jose Independent Police Auditor about the July 10, 2019, incident involving Officer Byrd.

43.   On or about March 24, 2020, plaintiff made a CPRA request ("March Request"), through her counsel, for the following records, among other records:

5.   All Computer Aided Dispatch (CAD) reports RELATING TO all law enforcement activities, during the July 10, 2019 Paul McCartney concert at SAP Center in San Jose.

6.   All audio and video recordings RELATING TO all law enforcement activities that originated from the July 10, 2019 Paul McCartney concert at SAP Center in San Jose, including but not limited to radio traffic recordings and body cam recordings.

44.   As to requests 5 and 6, the City responded as follows: "The Crime Analysis Unit can query calls for service and reported incidents that occurred on July 10, 2019 at location SAP Center, 525 W Santa Clara St, San Jose, CA 95113.  Please advise if you wish to receive this list."  On or about the same day, April 2, 2020, plaintiff requested the list and all responsive CAD reports.

45.   On or about April 7, 2020, the City sent a letter stating that it would notify plaintiff of disclosable records by April 17, 2020.  On or about April 27, 2020, the City sent another letter, asserting the following in response to requests 5 and 6: "A timeframe (example: from 12:00pm-5:00pm) for the date of July 10, 2019 is needed to proceed with this request."  On or about May 4, 2020, plaintiff responded by specifying the timeframe of 6:45 p.m. to 11:45

p.m.  On or about May 5, 2020, the City sent another letter, which represented the following with respect to requests 5 and 6: "This is currently in process.  I will provide an update by May 12, 2020."  After all of this, the City reversed course in a letter on or about May 20, 2020, which claimed the City could only provide a synopsis of the July 10, 2019 incident, as follows:

> Police records of complaints and investigations are generally exempt from public disclosure under California Government Code Section 6254(f).  The Department, however, is able to provide you with a synopsis of the incident pursuant to Section 6254(f).  Please refer to the attached.

46.   On or about April 7, 2020, plaintiff made a second CPRA request ("April Request") to the City, for the following records:

1.   All internal or external reports, including, but not limited to, handwritten reports or notes, concerning the July 10, 2019, incident involving Officer Jenni Byrd and Deborah Whiting [].

2.   All videos, including, but not limited to, BWC recordings, concerning the July 10, 2019, incident involving Officer Jenni Byrd and Deborah Whiting [].

3.   All COMMUNICATIONS, including but not limited to, statements, complaints, reports, and audio recordings, from Deborah Whiting [] to SAN JOSE POLICE.

4.   All WRITINGS RELATING TO statements made by Deborah Whiting [].

5.   All WRITINGS RELATING TO any internal or external investigation, including, but not limited to, investigations conducted by the SAN JOSE POLICE Internal Affairs Unit, concerning the July 10, 2019, incident involving Officer Jenni Byrd and Deborah Whiting [].

6.   All "Use of Force" reports, as described in the San Jose Police Department Duty Manual, Line/Operations Procedure L 2643 through L 2645, concerning the July 10, 2019, incident involving Officer Jenni Byrd and Deborah Whiting [].

47.   On or about April 20, 2020, the City sent a letter stating that it required an extension of time under Government Code section 6253(c) due to the COVID-19 pandemic, and would respond to the April Request no later than May 8, 2020.

48.   On or about May 8, 2020, the City sent a letter stating that it required an extension of time under Government Code section 6253(c) due to the COVID-19 pandemic, and would respond to the April Request "with further updates" no later than May 22, 2020.

49.   On or about May 22, 2020, the City sent a letter stating that it require an

8

extension of time under Government Code section 6253(c) due to the COVID-19 pandemic, and would respond to the April Request "with further updates" no later than June 8, 2020.

50.     On or about June 3, 2020, in response to further inquiries by plaintiff's counsel, April Benoit of the SJPD claimed in an email that the City Manager's Office was responsible for coordinating the response to the April Request, and attached a letter in response to the April Request that was dated April 14, 2020.  Ms. Benoit's June 3, 2020 email claimed the City could not comply with requests 5 and 6 from the March Request, or any of the six (6) requests in the April Request, under Government Code section 6254(f).  The City's letter dated April 14, 2020 – not received until on or about June 3, 2020 – likewise asserted as to the first four (4) requests in the April Request: "Police records of investigation and [sic] are exempt from public disclosure pursuant to California Government Code section 6254(f)."  As to requests 5 and 6 in the April Request, the April 14, 2020 letter did not assert any exemptions and instead stated: "Please provide a case number so we can further research your request."  Nevertheless, on or about June 3, 2020, the City, through Ms. Benoit, reversed course and claimed all records responsive to the April Request were exempt.

51.     After extensive efforts to meet and confer regarding the City's repeated extensions and failure to produce documents responsive to the April Request, on June 15, 2020, the City stated no records were going to be produced in response to the April Request because "only entitled parties" are able to receive the requested records and reports.

52.     On or about June 15, 2020, plaintiff's counsel followed up with a letter to an SJPD Sergeant, seeking records related to her complaint.  The letter specifically noted that Penal Code section 832.7(c) entitles plaintiff to copies of her own statements regarding her complaint.  To date, plaintiff has not received a response to this letter.

53.     An actual and immediate controversy has arisen and now exists between plaintiff and defendants related to their respective rights and duties.  Plaintiff is informed and believes, and thereon alleges, that defendants have failed to comply with their duties under the law to produce to plaintiff records that include her own statements, as required by Penal Code section 832.7(c).  Plaintiff contends, and defendants deny, that, separate and apart from the City's

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF; CASE NO.

1    obligations under the CPRA, the City must produce records containing plaintiff's own

2    statements because plaintiff is entitled to them under Penal Code section 832.7(c).

3            54.     Plaintiff desires a judicial determination of her rights and defendants' duties

4    under the above-mentioned laws.  A judicial declaration is necessary and appropriate at this

5    time, so that plaintiff may ascertain her rights and defendants' duties under the law.

6            55.     Plaintiff desires a judicial determination, declaration, and order that defendants

7    are required to produce all records containing her statements regarding her complaint about the

8    incident involving Officer Byrd on July 10, 2019.

9            56.     Defendants' failure to comply with state law has caused plaintiff to suffer

10   irreparable injury.  Unless enjoined by this Court, defendants will continue to unlawfully

11   withhold records that must be provided to plaintiff under the law.  Plaintiff has no plain,

12   adequate, or speedy remedy at law and is entitled to injunctive relief against defendants.

13           WHEREFORE, plaintiff prays for relief as set forth below.

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF; CASE NO.

## PRAYER FOR RELIEF

1.  For general damages, in an amount according to proof;

2.  For special damages, in an amount according to proof;

3.  For civil penalties to the extent allowed by law;

4.  Punitive damages against the individual defendant, as allowed by law;

5.  On the claim to compel compliance with Penal Code section 832.7(c), for a declaration, order and judgment that defendants must comply with Penal Code section 832.7(c) and produce to plaintiff copies of the records described in that section;

6.  On the claim to compel compliance with Penal Code section 832.7(c), for an injunction compelling the City to produce to plaintiff copies of any and all responsive records described in Penal Code section 832.7(c);

7.  For attorneys' fees, as allowed by law;

8.  For costs of suit;

9.  For interest as allowed by law; and

10. For such other and further relief as the Court may deem proper.


DATED: July 7, 2021                    McMANIS FAULKNER

                                       /s/ James McManis
                                       JAMES MCMANIS

                                       Attorneys for Plaintiff,
                                       DEBORAH WHITING

COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF; CASE NO.