UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEBORAH WHITING,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF SAN JOSE, et al.,<br><br>        Defendants. | Case No. 21-cv-05248-VKD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 40 |

In this civil rights action filed pursuant to 42 U.S.C. § 1983, defendants City of San Jose ("City") and Officer Jenni Byrd now move for partial summary judgment. Plaintiff Deborah Whiting opposes the motion. Upon consideration of the moving and responding papers,[1] as well as the oral arguments presented at the July 12, 2022 hearing, the Court grants defendants' motion.[2]

## I.     BACKGROUND

Unless otherwise indicated, the following material facts are undisputed.

On July 10, 2019, Ms. Whiting attended a Paul McCartney concert at the SAP Center in San Jose, where defendant Officer Byrd was working security. Dkt. No. 41-1 ¶¶ 2-3, Exs. A (Byrd Depo. at 61:10-14) & B (Whiting Depo. at 13:18-24). As soon as the concert started, Ms. Whiting found the volume of the concert to be too loud and asked an SAP staff member for a

---

[1] The Court struck Ms. Whiting's June 21, 2022 opposition brief and her separate statement of evidentiary objections for failure to comply with the Civil Local Rules. *See* Dkt. Nos. 41, 42. In resolving the present motion, the Court considers Ms. Whiting's corrected opposition brief, as well as the supporting declaration of Abimael Bastida and the appended exhibits. *See* Dkt. Nos. 41-1, 43.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 22.

refund of her concert ticket. *Id*. ¶ 3, Ex. B (Whiting Depo. at 22:9-15, 29:2-10). The SAP staff member directed Ms. Whiting into a stairwell where they could converse, and they were followed into the stairwell by Officer Byrd. *See id.* (Whiting Depo. at 29:2-10); *see also* Dkt. No. 1 ¶ 16. The SAP staff member left the stairwell to find a supervisor to address Ms. Whiting's refund request, and Ms. Whiting and Officer Byrd remained in the stairwell alone. Dkt. No. 41-1 ¶ 3, Ex. B (Whiting Depo. at 33:7-22); *see also* Dkt. No. 1 ¶ 17.

The parties dispute what happened next. Ms. Whiting claims that Officer Byrd physically assaulted her and threw her down onto the stairs, causing injuries. Dkt. No. 41-1 ¶ 3, Ex. B (Whiting Depo. at 38:21-39:5, 49:8-50:1, 54:20-22, 58:6-59:15). Defendants dispute that Officer Byrd grabbed Ms. Whiting or threw her against the stairs. In deposition, Officer Byrd testified that she placed her hand "on the back of [Ms. Whiting's] triceps and helped her up the stairs," when Ms. Whiting pulled away and fell. *Id*. ¶ 2, Ex. A (Byrd Depo. at 103:17-106:19).

That same day, July 10, 2019, Ms. Whiting complained to the San Jose Police Department ("SJPD") about the alleged assault by Officer Byrd. *See id*. ¶ 5. She says that she also lodged a complaint with the Independent Police Auditor ("IPA") on August 12, 2019. *See id*.

Ms. Whiting says that in March and April 2020, she requested records from the City relating to the July 10, 2019 incident, but the City did not produce all records. *See id*. ¶¶ 6, 7; *see also* Dkt. No. 1 ¶ 31.

Ms. Whiting subsequently received a letter from the SJPD, dated October 14, 2020, stating that "a disposition of **Not Sustained** has been reached on your allegations of **Force**." Dkt. No. 41-1 ¶ 8, Ex. C.

Ms. Whiting filed the present action on July 7, 2021, asserting two claims for relief against both defendants. Her first claim is based on 42 U.S.C. § 1983 and alleges excessive force in violation of the Fourth Amendment to the U.S. Constitution. Her second claim for relief concerns her request for records and is styled as "Action to Compel Compliance with [California] Penal Code § 832.7(c)—[California] Code Civ. Proc. §§ 526, 1060." Dkt. No. 1.

The City now moves for summary judgment on Ms. Whiting's § 1983 claim, arguing that, even assuming the events unfolded as Ms. Whiting claims, she does not have evidence to support

2

municipal liability.  The City and Officer Byrd move for summary judgment on Ms. Whiting's second claim for relief, contending that the claim is moot because the City has already fully complied with her request for records.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses.  *See id*. at 1102.  The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.  *See id*.  A genuine issue of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp*., 477 U.S. at 325).  Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial.  *Id.*

3

### III. DISCUSSION

#### A. Claim 1: 42 U.S.C. § 1983 (Excessive Force)

Ms. Whiting claims that Officer Byrd used excessive force in violation of Ms. Whiting's constitutional rights under the Fourth Amendment. Defendants do not move for summary judgment on that claim against Officer Byrd.

At issue in the present motion is Ms. Whiting's claim that the City is liable for Officer Byrd's conduct because "[t]he City, including the SJPD, failed adequately to train, supervise, and discipline Officer Byrd and other officers regarding the use of reasonable methods to detain and arrest individuals." Dkt. No. 1 ¶ 25. Her complaint alleges that Officer Byrd's actions "were the direct and proximate result of the failure of the City to train the SJPD officers adequately on what is required under the Fourth Amendment, and the case law interpreting it, to support the use of force"; that her injuries "were the proximate result of customs, policies, and practices which included, but were not limited to, the failure to adequately or appropriately to train officers in making detentions, arrests, and using force"; and that the "ratification" of "deliberate indifference, customs, policies, and practices of defendants" violated her civil rights. *See id.* ¶¶ 34-36.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). However, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir.1995). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

To impose municipal liability under § 1983 for a violation of her constitutional rights, Ms.

4

Whiting bears the burden to prove that: (1) she possessed a constitutional right of which she was deprived; (2) the City had a policy; (3) this policy amounts to deliberate indifference to her constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *See Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997). Municipal liability may be established in one of three ways: (1) by demonstrating that a municipal employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity; (2) by demonstrating that the individual who committed the constitutional tort was an official with final policymaking authority and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice made from among various alternatives, or (3) by proving that an official with final policymaking authority ratified a subordinate's unconstitutional decision or action and the basis for it. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Although defendants dispute Ms. Whiting's allegations that Officer Byrd grabbed her or threw her against the stairs, for present purposes the City contends that even if Ms. Whiting's allegations regarding the assault are true, she does not have evidence supporting the City's liability for Officer Byrd's alleged actions. The City cites to the declaration of its litigation counsel, who opines that based on her review of the disclosures and discovery in this case, she does not believe there is any evidence to support the City's liability under *Monell*. *See* Dkt. No. 40-1 ¶¶ 5-8. Most of counsel's assertions in the cited portions of her declaration are arguments concerning legal conclusions,[3] and Ms. Whiting's objections to paragraphs 5-8 of counsel's declaration are sustained, except that the Court concludes that it properly may consider counsel's statement at paragraph 5, lines 6-8 that "[i]n response to [Ms. Whiting]'s requests for production, the City produced Officer Byrd's record of Peace Officer Standards and Training (POST)-certified training on matters related to the use of force." *See* Fed. R. Evid. 701, 702; *see also* Civil L.R. 7-5(b) ("An affidavit or declaration may contain only facts, must conform as much as possible to the

---

[3] Defense counsel appears to tacitly acknowledge that she cannot properly testify about such matters, inasmuch as her declaration simply states that based on her personal knowledge, she could competently testify only to the fact that she prepared defendants' motion for partial summary judgment. *See* Dkt. No. 40-1 ¶ 2.

requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument. . . . An affidavit or declaration not in compliance with this rule may be stricken in whole or in part."). Nonetheless, in its motion, the City points to a lack of evidence to support its liability under *Monell*. *See* Dkt. No. 40 at 4-7. As the party with the burden to establish municipal liability, in order to avoid summary judgment Ms. Whiting must present evidence sufficient to demonstrate that there is a genuine issue for trial. *See Devereaux,* 263 F.3d at 1076.

### 1. Longstanding practice or custom

Ms. Whiting contends that, despite what any formal written policy might say, the City has a longstanding practice or custom of officers' use of excessive force for which officers are not disciplined or discharged. *See* Dkt. No. 43 at 12. A municipality may be held liable on the basis of an unconstitutional policy if the plaintiff is "able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167-168 (1970)). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918. However, an isolated constitutional violation may be sufficient to establish a municipal policy where (1) "the person causing the violation has 'final policymaking authority,'" (2) "the final policymaker 'ratified' a subordinate's actions," or (3) "the final policymaker acted with deliberate indifference to the subordinate's constitutional violations." *Christie*, 176 F.3d at 1235, 1238, 1240. "Normally, the question of whether a policy or custom exists would be a jury question." *Trevino*, 99 F.3d at 920. "However, when there are no genuine issues of material fact and the plaintiff has failed to establish a prima facie case, disposition by summary judgment is appropriate." *Id*.

The sole evidence Ms. Whiting presents are excerpts from the San Jose IPA's 2018 and

1  2019 Year End Reports[4]—namely, statistics of the number of use of force complaints and
2  allegations made and the disposition of such complaints and allegations in each of those years.
3  Dkt. No. 41-1 ¶¶ 12-13, Exs. D and E.  Apparently based on those reports, Ms. Whiting provides
4  charts summarizing the number of use of force allegations[5] made between 2014 and 2018,
5  purporting to show that despite hundreds of allegations of use of force, only 1 allegation was
6  "Sustained"[6] in each of the years 2014, 2016, 2018; no allegations were sustained in 2015 or 2017;
7  and the majority of allegations were deemed "Exonerated."[7]  For the year 2019, Ms. Whiting cites
8  only to the portion of the report stating that 100 allegations of excessive force were filed in that
9  year.  *See* Dkt. No. 41-1 ¶ 13, Ex. E.

10  The City objects that Ms. Whiting did not include the IPA reports in her initial disclosures
11  or produce them in discovery, which closed on April 18, 2022.  Dkt. No. 44-1 ¶¶ 4-5 and Ex. A;
12  *see also* Dkt. Nos. 20, 38.  "If a party fails to provide information or identify a witness as required
13  by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence
14  on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."
15  Fed. R. Civ. P. 37(c)(1).  Ms. Whiting has offered no explanation for why the IPA reports and her
16  reliance on them was disclosed for the first time in response to the pending motion.  At the motion
17  hearing, Ms. Whiting acknowledged that she did not produce the IPA reports in discovery, but
18  argued that the reports were sufficiently identified in her Rule 26(a) initial disclosures.  Her initial
19  disclosures, however, refer only to documents that specifically "concern Deborah Whiting,

---

[4] Ms. Whiting directs the Court to the full reports, which are publicly available online.  Dkt. No. 41-1 ¶¶ 12, 13.  *See* https://www.sanjoseca.gov/home/showpublisheddocument/51467 (2018 Year End Report); https://www.sanjoseca.gov/home/showpublisheddocument/64206 (2019 Year End Report).

[5] The IPA reports note that the annual number of reported *allegations* are higher than the annual number of use of force *complaints* because one complaint may contain more than one use of force allegation.  *See* 2018 Year End Report at 27; 2019 Year End Report at 22.

[6] The 2018 Year End Report indicates that a disposition of "Sustained" means that the investigation "disclosed sufficient evidence to clearly prove that the allegation about the conduct of the officer was true."  2018 Year End Report at 96.

[7] The 2018 Year End Report indicates that a disposition of "Exonerated" means that the investigation determined that the level and type of force used by officers were found to be "reasonable and justified."  2018 Year End Report at 35; *see also id.* at 95.

7

plaintiff, or the July 10, 2019 incident," and do not encompass the annual reports on which she now relies. *See* Dkt. No. 44-1, Ex. A at 3.

Even assuming Ms. Whiting properly disclosed the IPA reports in discovery, the cited reports and summary statistics are insufficient to create a material fact issue regarding her *Monell* claim. Ms. Whiting does not offer any explanation of the proffered statistics, other than to argue that a constitutional violation appropriately may be inferred from the number of reported incidents in any given year relative to the number of incidents where a complaint or allegation of force was sustained or exonerated. However, in the excessive force context, courts have repeatedly held that "'[s]tatistics of unsustained complaints of excessive force and other police misconduct, without any evidence that those complaints had merit, does not suffice to establish municipal liability under § 1983.'" *Zeen v. Cnty. of Sonoma*, No. 17-cv-02056-LB, 2018 WL 2445518, at *9 (N.D. Cal. May 31, 2018) (quoting *Bagley v. City of Sunnyvale*, No. 16-cv-02250-JSC, 2017 WL 3021030, at *2 (N.D. Cal. July 17, 2017); *Hocking v. City of Roseville*, No. 06-0316, 2008 WL 1808250, at *5 (E.D. Cal. Apr. 22, 2008) (same); *see also Strauss v. City of Chicago*, 760 F.2d 765, 768-69 (7th Cir. 1985) ("Plaintiff suggests that the police department's sustaining only six to seven percent of all registered complaints filed for 1977, 1978 and 1979 'must give rise to a reasonable man's suspicions that defendant Chicago's methods of review are weighted to discourage positive findings' . . . . This reasoning is specious, for the number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all. That they filed complaints does not indicate that the policies that Strauss alleges exist do in fact exist and did contribute to his injury.") (footnote omitted). *Cf. Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (concluding that where the plaintiffs presented expert testimony regarding his analysis of a 2-year study of police complaints, "[t]he jury was entitled to conclude that this evidence supported [plaintiffs]' theory that the LAPD's disciplinary and complaint processes, executed by policy or custom, contributed to the police excesses complained of because the procedures made clear to officers that, at least in the absence of independent third-party witnesses, they could get away with anything.").

Ms. Whiting's citation to *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 2021) and

1   *Watson v. City of Kansas City, Kansas*, 857 F.2d 690 (10th Cir. 1988) does not compel a contrary
2   conclusion. Neither of those cases involved allegations of excessive force and both cases
3   concerned the use of different kinds of statistics. *Busby* concerned a former police officer's claim
4   of wrongful termination; her statistics showing that African Americans comprised only 11 percent
5   of the police department's employees, but 69 percent of the employees fired were deemed highly
6   relevant to her claim of race discrimination. *See Busby*, 931 F.2d at 783. *Watson* concerned the
7   plaintiffs' equal protection claim that the police provided less protection to victims of domestic
8   violence than to those of non-domestic violence. The court concluded that the plaintiffs' statistical
9   evidence showing that during the same period the percentage of arrests in non-domestic assaults
10  was nearly twice as high as the arrests in domestic assault cases—coupled with evidence that
11  officers were trained to use arrest only as a last resort in domestic violence matters—was
12  sufficient to create material fact issues defeating summary judgment. *Watson*, 857 F.2d at 695-96.
13          By contrast, in the present case, Ms. Whiting would need to identify what made the use of
14  force in other matters illegal and show that a similar illegality was involved in her case. *See*
15  *Strauss*, 760 F.2d at 769; *see also, e.g., Hunter v. County of Sacramento*, 652 F.3d 1225, 1227-28
16  (9th Cir. 2011) (noting that the district court denied summary judgment in an excessive force case
17  where the plaintiff submitted an expert declaration from a former county sheriff's department
18  employee, detailing prior incidents of force, including a matter that an official admitted should
19  have been investigated but was not); *Davis v. Clearlake Police Dep't*, No. C-07-03365 EDL, 2008
20  WL 4104344, at *8 (N.D. Cal. Sept. 3, 2008) (concluding that evidence that five prior lawsuits
21  were filed against the municipal defendant did not raise a triable fact issue regarding *Monell*
22  liability where plaintiffs did not provide evidence of the outcome of the lawsuits or any other
23  details). Ms. Whiting has not made such a showing. Nor has she offered any other evidence from
24  which a reasonable jury could infer that the City had a longstanding practice or custom of officers'
25  use of excessive force for which officers are not disciplined or discharged.
26              **2.      Failure to train**
27          In order to establish § 1983 municipal liability based on a failure to train, Ms. Whiting
28  must show (1) a deprivation of a constitutional right, (2) the City had a training policy that

amounts to deliberate indifference to the rights of persons with whom the police officers are likely to come into contact; and (3) her constitutional injury would have been avoided had the City properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

"[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* "[P]ermitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities—a result [the Supreme Court] rejected in *Monell*." *Id.* at 392. As explained by the Supreme Court, in resolving the question of a city's liability, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform":

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 391 (citations omitted). Additionally, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* That is, the plaintiff must prove that the deficiency in training actually caused the police officer's indifference to her rights. *Id.*

"A municipality's culpability for a deprivation of rights is at its most tenuous where a

claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).[8]  Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (internal quotations and citation omitted). "This standard is met when 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Johnson v. City of San Jose*, — F. Supp. 3d —, No. 21-cv-01849-BLF, 2022 WL 799424, at *10 (N.D. Cal. Mar. 16, 2022) (quoting *Canton*, 489 U.S. at 390). "While deliberate indifference can be inferred from a single incident when 'the unconstitutional consequences of failing to train' are 'patently obvious,' an inadequate training policy itself cannot be inferred from a single incident." *Hyde v. City of Wilcox*, 23 F.4th 863, 874-75 (9th Cir. 2022) (quoting *Connick*, 563 U.S. at 61). Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62; *accord Johnson*, — F. Supp. 3d —, 2022 WL 799424 at *10. "Otherwise, a plaintiff could effectively shoehorn any single incident with no other facts into a failure-to-train claim against the supervisors and the municipality." *Hyde*, 23 F.4th at 875.

Ms. Whiting appears to contend that her failure-to-train claim falls within the narrow class of cases where the unconstitutional consequences of a failure-to-train are so "patently obvious" that deliberate indifference may be inferred from the single incident in question. Here, she argues that "the constitutional duty of the individual officer is clear: the officer must be trained in the constitutional limitations on the use of force in arresting, detaining, or interacting with citizens under the color of law." Dkt. No. 43 at 13. She contends that the need for such training is "obvious . . . because an officer's use of force is a clear constitutional duty that is implicated every time the officer puts on his or her uniform" and "is a scenario the officer faces most, if not every, day on the job." *Id.* Ms. Whiting further asserts that the "failure to train police officers on the

---

[8] To the extent Ms. Whiting suggests that the Supreme Court's guidance in *Connick* regarding the standard for failure-to-train claims does not apply because *Connick* concerned the conduct of a prosecutor, rather than a police officer, her arguments are unpersuasive.

11

constitutional limitations regarding use of force is likely to result in the violation of constitutional rights of citizens." *Id*.

However, Ms. Whiting has not offered any evidence from which a reasonable jury could find that the City is liable based on a failure to train its officers in the use of force. At the motion hearing, Ms. Whiting acknowledged that defendants produced Officer Byrd's training records, but she could not say whether or not those records reflected training in use of force. To the extent Ms. Whiting claims that Officer Byrd was not trained at all, she must support that assertion with evidence. At oral argument, Ms. Whiting confirmed that as evidence of the City's failure to train its officers in the use of force, she relies on the statistics from the IPA 2018 and 2019 Year End Reports, from which she says a jury reasonably may infer that the SJPD fails to train its officers, or else they would not have so many complaints. For the reasons discussed above, without any evidence of what made the alleged use of force in other matters illegal or that they involved a similar illegality to the present case, the cited statistics are insufficient to create a triable issue regarding the City's alleged failure to train officers on the use of force.

### 3. Ratification

"To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie*, 176 F.3d at 1239 (quoting *Praprotnik*, 485 U.S. at 127). While a single decision by a municipal final policymaker may be sufficient to trigger liability under *Monell*, such liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.

Pointing again to her statistics regarding the IPA 2018 and 2019 Year End Reports, Ms. Whiting argues that "the City and those with policymaking authority, such as Chief of Police Edgardo Garcia, had actual or constructive knowledge of the vast numbers of complaints against police officers regarding use of force, and the number of officers within the police department who received complaints regarding use of force," but "failed to act, i.e., discipline, reprimand, or adequately train police officers." Dkt. No. 43 at 16; Dkt. No. 41-1 ¶¶ 12-13, Exs. D and E. For

the reasons discussed above, her arguments based on that statistical evidence alone, without any evidence of what made the alleged use of force in other matters illegal or that they involved a similar illegality to the present case, fail to create a triable issue. While Ms. Whiting points out that SJPD concluded that her allegations against Officer Byrd were "Not Sustained" and asserts, on information and belief, that Officer Byrd was never disciplined (Dkt. No. 41-1 ¶¶ 8-9, Ex. C), "[a] mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). *See Rasku v. City of Ukiah*, 460 F. Supp. 3d 934, 945 (N.D. Cal. 2020) (same); *Estate of Adomako*, No. 17-cv-06386-DMR, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) ("A police department's 'mere failure to discipline its officers does not amount to ratification of their allegedly unconstitutional actions.'") (quoting *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part*, 575 U.S. 600 (2015)).

Ms. Whiting has not offered evidence sufficient to create a material fact issue regarding the City's § 1983 liability under *Monell* based on a longstanding practice or custom, a failure to train, or ratification. Accordingly, the Court grants the City's motion for summary judgment on Ms. Whiting's *Monell* claim.

### B.     Claim 2:  California Penal Code § 832.7

In her second claim for relief, Ms. Whiting seeks to "[c]ompel [c]ompliance with [California] Penal Code § 832.7(c)" and states that the claim is brought pursuant to California Code of Civil Procedure § 526 and § 1060, which generally concern actions for injunctive and declaratory relief.[9] Dkt. No. 1 ¶¶ 39-56. She claims that defendants delayed in responding to her requests for records and "failed to comply with their duties under the law to produce to [Ms. Whiting] records that include her own statements, as required by Penal Code section 832.7(c)."

---

[9] California Civil Code § 526 describes the circumstances in which an injunction may be entered. California Civil Code § 1060 generally discusses actions for a declaration of rights and duties and provides, in relevant part, that "[a]ny person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties in the premises . . . ."

*Id.* ¶ 53. California Penal Code § 832.7 provides for the confidentiality of peace officer personnel records, but nonetheless states that "a department or agency shall release to the complaining party a copy of his or her own statements at the time the complaint is filed." Cal. Penal Code § 832.7(c). While Ms. Whiting notes that § 832.7 allows for a delay in the disclosure of records under certain circumstances (i.e., where there is an active criminal or administrative investigation), she contends that no such investigations were ever initiated in the present case. Dkt. No. 43 at 18. Ms. Whiting's complaint alleges that there is a present controversy between the parties because they disagree whether "*separate and apart from the City's obligations under the CPRA [California Public Records Act]*, the City must produce records containing [Ms. Whiting]'s own statements because [she] is entitled to them under Penal Code section 832.7(c)." Dkt. No. 1 ¶ 53 (emphasis added).

The City and Officer Byrd now move for summary judgment on the ground that there no longer is a present controversy because the City has provided Ms. Whiting with all copies of statements she made when she complained about the July 10, 2019 encounter with Officer Byrd. *See* Dkt. No. 40-1 ¶¶ 9-12; Dkt. No. 40-2; Dkt. No. 40-3. Ms. Whiting does not dispute that assertion or the evidence presented. Rather, she contends that a live dispute remains because she is entitled to seek her attorney's fees under the CPRA. *See* Cal. Gov. Code §§ 6258, 6259. Although Ms. Whiting's complaint indicates that her requests for records were made pursuant to the CPRA (*see, e.g.,* Dkt. No. 1 ¶¶ 43, 46), nothing in her complaint indicates that Ms. Whiting intended to base this claim for relief under the CPRA. Indeed, as noted above, her complaint is based solely upon an alleged disagreement between the parties over defendants' obligations to produce Ms. Whiting's statements under California Penal Code § 832.7(c), "separate and apart from the City's obligations under the CPRA[.]" Dkt. No. 1 ¶ 53; *see also id.* at p. 11 (Prayer for Relief ¶¶ 5, 6).

During the hearing on the motion, Ms. Whiting conceded that there is no private right of action to enforce Penal Code § 832.7(c) and that, in any event, her claim for injunctive relief is now moot.

Accordingly, the Court grants defendants' motion for summary judgment on this claim.

14

IV. **CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment is granted as follows:

1. The City's motion for summary judgment is granted as to Claim 1 (42 U.S.C. § 1983).
2. Defendants' motion for summary judgment is granted as to Claim 2 (Cal. Penal Code § 832.7(c)).

**IT IS SO ORDERED.**

Dated: July 13, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge

15